# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **BRIAN M. SNOW,** | ) | |
| **AIS# 228680,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.:** |
| | ) | **2:17-CV-149-WHA** |
| **LT. HINES,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## SPECIAL REPORT

COME NOW the Defendants, **Warden John E. Crow, Captain Ronzella Howard; Lieutenant Derrick Hines, Correctional Officer Cedric Weathers,** by and through undersigned counsel, and pursuant to this Court's Orders of April 6, 2017 (Doc. 7), May 18, 2017 (Doc. 16) and June 16, 2017 (Doc. 22), offer the following written report.

## PARTIES

1.     The Plaintiff, Brian Snow, AIS # 228680, is an Alabama Department of Corrections ("ADOC") inmate, who was incarcerated at Staton Correctional Facility in Elmore, Alabama at all times relevant to this case. Plaintiff Snow is now incarcerated at Bibb Correctional Facility in Brent, Alabama.

2.     Defendant John E. Crow, is employed as a Correctional Warden with ADOC at Staton Correctional Facility in Elmore, Alabama.

3.     Defendant Ronzella Howard, is employed as a Correctional Captain with ADOC at Staton Correctional Facility in Elmore, Alabama.

4.      Defendant Derrick Hines, is employed as a Correctional Lieutenant with ADOC at Staton Correctional Facility in Elmore, Alabama.

5.      Defendant Cedric Weathers, is employed as a Correctional Officer with ADOC at Staton Correctional Facility in Elmore, Alabama.

## EXHIBITS

1.      Exhibit A – Affidavit of Lt. Derrick Hines;

2.      Exhibit B – Affidavit of Correctional Officer Cedric Weathers;

3.      Exhibit C – Affidavit of Custodian of Records with attached certified redacted medical documents;

4.      Exhibit D – Affidavit of Sandra Taylor with attached certified redacted prison records;

5.      Exhibit E – Affidavit of Captain Ronzella Howard; and,

6.      Exhibit F – Affidavit of Warden John E. Crow[1].

## PLAINTIFF'S ALLEGATIONS

Plaintiff's Complaint, filed on March 15, 2017, arises out of an incident and injury that occurred on January 5, 2017 between 2:00 a.m. and 3:00 a.m. at Staton Correctional Facility.  Plaintiff alleges that during that time frame, Lt. Hines forced him to fight an inmate, who Plaintiff had fought with earlier that day.  (Doc. 1, pp. 4-5).  Plaintiff alleges Lt. Hines threatened to beat him up if he did not fight the inmate, "to prevent a killing[2]."  (Doc. 1, p. 4).  Plaintiff claims he permanently injured his right shoulder after Lt. Hines, in Officer Weathers presence, insisted that they keep fighting, even though Plaintiff had

---

[1] Warden Crow's signed and notarized affidavit will be promptly submitted upon receipt of the same.
[2] According to Plaintiff, Lt. Hines allegedly told him that "he [Hines] was just trying to prevent a killing, because the other inmate was feeling like he wanted to kill me."  (Doc. 1, p. 4).

already purportedly been hit and slammed him to the ground by the other inmate. (Doc. 1, pp. 4-5). Lt. Hines denies forcing Plaintiff Snow to fight inmate Lawson, as Plaintiff has alleged, or any other inmate. (See Lt. Derrick Hines' affidavit at Ex. A). Officer Weathers has no knowledge of this alleged incident. (See Cedric Weather affidavit at Ex. B)

In sharp contrast to the allegations in his Complaint, Plaintiff's initial statements about how his injury happened, as well as inmate witness statements, reflect that Plaintiff injured his right shoulder when he fell in his cell. (See Inmate Statement on January 5, 2017 on Body Chart at Ex. C, p. 77; see January 10, 2017 Nursing Encounter Tool form at p. 74, Ex. C; see inmate Statements at Ex. D, pp. 4, 5 and 8). Plaintiff said nothing about being in a fight with another inmate when his body chart was taken and his right shoulder injury assessed and treated on January 5, 2017. (See Body Chart at Ex. C, p. 77 and Ex. D, p. 3). According to the body chart, Plaintiff Snow stated, he fell "backwards on to floor and landed on my RT shoulder". (See Body Chart at Ex. C, p. 77 and Ex. D, p. 3). Plaintiff is seeking $200,000 in monetary damages for, among other things, being allegedly "injured for life" by "the very fight Lt. Hines forced me" to be involved in. (Doc. 1, p. 5-6).

## DEFENDANTS' RESPONSE/ANSWER

1.      Defendants assert that Plaintiff has failed to state a claim upon which relief can be granted.

2.      Defendants deny that any of Plaintiff's constitutional rights have been violated.

3.      Defendants deny all material allegations not expressly admitted herein.

4.      Defendants assert the defenses of absolute immunity under the Eleventh Amendment and qualified immunity.

5.      Defendants assert that there is no Respondeat Superior liability under 42 U.S.C. Section 1983.

**STATEMENT OF FACTS**

On January 5, 2017, while conducting a Security check in D-Dormitory, Correctional Officer Cedric Weathers observed Plaintiff Snow and inmate Lawson engaged in a verbal altercation. (Ex. B). At approximately 2:05 a.m., Lt. Derrick Hines was notified by Officer Weathers, that Plaintiff Snow and Inmate Lawson were in a verbal altercation. (Ex. A). Officer Weathers escorted both inmates to the Shift Office. (Exs. A and B). Lt. Hines reprimanded both inmates. (Ex. A). The inmates continued to taunt each other and grabbed each other attempting to fight. (Exs. A and B). They were separated immediately and the issue was resolved. (Exs. A and B). Both inmates signed a living agreement. (Exs. A and B; also, see Ex. D, p. 6). To Correctional Officer Weathers' knowledge, the above-related facts are the entirety of his involvement with Plaintiff Snow concerning the allegations on which Snow's complaint is based. (Ex. B). At no time did Lt. Hines force Plaintiff Snow to fight inmate Lawson or any other inmate. (Ex. A). During questioning, Plaintiff Snow advised Lt. Hines that he had hurt his shoulder previously by jumping off his rack in the dorm. (Ex. A).

Capt. Ronzella Howard also questioned Plaintiff Snow and Snow asked Capt. Howard to speak with inmate John Hunter for the truth. (Ex. E). Inmate Hunter informed Capt. Howard that he observed Plaintiff Snow fall from his bed and injure his shoulder. (Ex. E). And, according to the inmate statement section on Plaintiff Snow's Inmate Body Chart Documentation Form, Plaintiff Snow told the nurse, "I fell backwards on to floor and landed on my RT shoulder." (Ex. E).

Warden Crow has no direct knowledge of this incident due to not being at work during this incident. (Ex. F).

## LEGAL ARGUMENT

### Plaintiff Snow's Failure to Protect Claim Fails as a Matter of Law

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty upon prison officials " 'to protect prisoners from violence at the hands of other prisoners." ' Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). However, not every instance of an inmate-on-inmate altercation "translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 833-34. To establish that a prison official has violated the Eighth Amendment an inmate must show that the prison official's acts or omissions resulted in the denial of " 'the minimal civilized measure of life's necessities," ' and that the prison official was deliberately indifferent to his safety. Id.

To prove a prison official violated the Cruel and Unusual Punishments Clause, there must be a showing that the prison official had a "sufficiently culpable state of mind." Id. at 834. In prison condition cases, the culpable state of mind is "deliberate indifference" to the health or safety of the inmate. Id. Obviously then, the mere negligent failure to protect an inmate from attack by fellow inmates fails to provide a sufficient basis for liability under 42 U.S.C. § 1983. Id. at 835, 114 S.Ct. at 1978; see also Wilson v. Seiter, 501 U.S. 294, 305, 111 S.Ct. 2321, 2328, 115 L.Ed.2d 271 (1991) (mere negligence does not satisfy the deliberate indifference standard).

It is "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." Farmer, at 828. In order to constitute "deliberate indifference," the prison official (1) must have subjective knowledge of the risk of serious harm, and (2) must nevertheless fail to reasonably respond to the risk. Id. at 837-38. [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." Id. at 838

"It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials

responsible for the victim's safety." Id. at 834. A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not respond reasonably to the risk'...." Marsh v. Butler County, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc), quoting Farmer. "The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a guard's failure to act constitute deliberate indifference." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990); see also Rich v. Bruce, 129 F.3d 336, 339–40 (4th Cir. 1997) (unless a prison official actually makes the inference that a substantial risk of serious harm exists, he does not act with deliberate indifference even where his actions violate prison regulations or can be described as stupid or lazy). An "official's failure to alleviate a significant risk that he should have perceived but did not," does not constitute deliberate indifference. See Farmer at 838.

Even if one were to accept Plaintiff's conclusory and completely unsubstantiated allegations as true, at no point did Plaintiff indicate that he was afraid of the other inmate or that he had placed the Defendants on notice that the alleged inmate had issued a specific threat to his safely. An inmate "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." McGill v. Duckworth, 944 F.2d 344, 349 (7th Cir.1991); *overruled in part on other grounds by* Farmer. According to the Plaintiff, it was Lt. Hines who told him, the Plaintiff, that the other inmate "was feeling like he wanted to kill me", and

7

the purported reason for the alleged fight was to try to "prevent a killing." (Doc. 1, p. 7).  And, although Plaintiff claims he objected to the alleged proposed fight, Plaintiff did not object based on any fear for his safety.  (Doc. 1, p. 4).

Regardless, the record is devoid of evidence, other than Plaintiff's conclusory allegations, that he was injured in a fight Lt. Hines purportedly forced him to engage in with another inmate.  For instance, the body chart reads that "Rt Shoulder – obvious displacement noted with bruising noted to top of Rt clavicle bone.  Small cut to right forearm underneath. *No other injuries seen to head, face, chest, legs left arm, or back.*  (See Description of Markings on Body Chart at Ex. C, p. 77, *emphasis added*, also see photographs at Ex. D, pp. 11-13).  Yet, Plaintiff claims in his Complaint that he was punched in the face, hit several times and slammed to the ground more than once in the alleged fight he says he was forced to engage in.  (Doc. 1, pp. 4-5).

Furthermore, Plaintiff's conclusory allegations are contrary to the established record.  Two (2) inmate handwritten statements dated January 5, 2017, indicate that Plaintiff fell and hurt himself.  (Ex. D, pp. 4-5).  The third inmate handwritten statement, from the other inmate (Ex. D, p. 8), makes no reference to the alleged fight in issue.  Finally, it is undisputed that Lt. Hines had Plaintiff and the other inmate, Patrick Lawson, sign a Living Agreement to try to resolve their differences.  (See Exs. A, B and Ex. D, p. 6).

In addition, and as noted above, on Thursday, January 5, 2017 at 2:50 a.m., Plaintiff stated that "I fell backwards on to floor and landed on my right shoulder.  (See Inmate Statement on Body Chart at Ex. C, p. 77 and Ex. D, p. 3).

The Emergency Department Referral form reads that "He fell on the floor - slipped and landed on his right shoulder – causing it to pop out of place - ? collar bone-FX". (See Emergency Department Referral form at Ex. C, p. 80). Also, on January 5, 2017, another medical form reads, in pertinent part, that Plaintiff "slipped and fell onto concrete floor landing on Rt shoulder" and "fall on to floor". (See Nursing Encounter Tool form at "Chief Complaint and "Describe injury" at Ex. C, p. 81) And, on Tuesday, January 10, 2017, Plaintiff's chief complaint was his right shoulder pain, which was caused by trauma he experienced when "I fell" on January 5, 2017. (See Ex. C, p. 74, Nursing Encounter Tool form).

Subsequently thereto, on January 11, 2017, six (6) days after his injury, Plaintiff belatedly claimed for the first time that he was injured as indicated in the lawsuit he filed in March 2017. On January 17, 2017, Plaintiff reiterated his belated claim that his shoulder injury was due to Lt. Hines purportedly forcing him to fight another inmate at 2 a.m. when he was allegedly slammed and his shoulder was broken. Snow added that "They want me to say that I fell out of bed." (See Sick Call Request dated January 17, 2017 at Ex. C, p. 71). Again, this is unsubstantiated and contrary to the record.

In light of the foregoing Plaintiff's conclusory allegations cannot withstand a motion for summary judgment as Plaintiff's self-serving, conclusory statements in his verified complaint are insufficient to create a genuine question of fact regarding how his injury occurred. See Holifield, 115 F.3d at 1564 n. 6; Fullman v. Graddick, 739 F.2d 553, 556–57 (11th Cir. 1984) ("mere verification

of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment"); see also Larken v. Perkins, 22 Fed.Appx. 114, 115 n.* (4th Cir. 2001) (noting that the district court properly found a party's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation ... insufficient to stave off summary judgment"). A court will not resolve facts in the plaintiff's favor based solely on the unsupported allegations in the plaintiff's complaint if the defendant presents undisputed evidence to the contrary. See Legg, 428 F.3d 1317 at 1323 (11th Cir. 2005).

### Plaintiff Snow's claims against Warden Crow and Captain Howard are due to be dismissed.

The claims against Defendants, Warden Crow and Captain Howard are due to be dismissed. No specific allegations are asserted against Warden Crow or Captain Howard in the Complaint. (See Doc. 1). Thus, there is no allegation that these Defendants were present and/or participated in any alleged actions and/or inactions that resulted in Plaintiff Snow's injury. Warden Crow was not at work during this alleged incident and Captain Howard was merely the investigator. (Exs. E and F). Plaintiff Snow appears to have named Warden Crow and Captain Howard as Defendants solely because of their supervisory positions, under the theory of respondeat superior. However, it is well established that supervisory officials are not liable under § 1983 for the alleged unconstitutional acts of their subordinates based on respondeat superior or vicarious liability, as there is no respondeat superior liability in §1983 cases. Dean v. Barber, 951 F.2d 1210 (11th Cir. 1992). See Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  Id.  This connection may also be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'  Id.  (Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).  There is no such evidence to that effect here. (See Ex. D).  Therefore, Plaintiff Snow's claims against Warden Crow and Captain Howard are subject to dismissal.

### Defendants are immune from suit.

Another ground supporting a judgment in favor of the Defendants is immunity.   To the extent they are sued in their official capacity, they are immune from liability. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  The Amendment therefore not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizenry.  See Edelman v. Jordan, 415 U.S. at 663, 94 S. Ct.

at 1347 and <u>Hans v. Louisiana</u>, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L.Ed. 842 (1890). The Eleventh Amendment also prohibits suit against state officials and employees where the state is the real, substantial party in interest. <u>See Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09, 79 L.Ed.2d 67 (1984). "For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit." <u>Summit Medical Associates, P.C. v. Pryor</u>, 180 F.3d 1326, 1336 (11th Cir. 1999). This suit is in reality a suit against the State. Thus, the Defendants are absolutely immune from damages liability.

In addition, the Defendants are protected by qualified immunity. As stated by the Eleventh Circuit, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting <u>Lassiter v. Alabama A & M Univ. Bd. of Trustees</u>, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc). Because the alleged acts of the Defendants consist of discretionary functions, and because the actions do not violate any clearly established constitutional or statutory rights, the Defendants are protected by qualified immunity. <u>Wilson</u>, <u>supra</u> (holding that the marshal, wardens, and corrections officer were protected by qualified immunity); <u>see</u> <u>also Pinkney v. Davis</u>, 952 F. Supp. 1561 (M.D. Ala. 1997) (holding that wardens, deputy warden, and other prison officials were entitled to qualified

immunity).  The Eleventh Circuit has held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"  Wilson, 163 F.3d at 1295.  Thus, a summary judgment should be entered in favor of the Defendants.

## **CONCLUSION**

The Defendants deny that they have violated Plaintiff Snow' constitutional rights as alleged.  Based on all the foregoing, the Defendants respectfully request that this Honorable Court enter summary judgment in their favor.

Respectfully submitted this 10th day of July, 2017.

STEVEN T. MARSHALL
ATTORNEY GENERAL

 /s/ MARY GOLDTHWAITE
MARY GOLDTHWAITE
Assistant Attorney General
Counsel for Defendants

OF COUNSEL:

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL  36130
(334) 353-9189
(334) 242-2433 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2017, I electronically filed the foregoing Special Report with the Clerk of the Court, using the CM/ECF system, and that I have further served a copy on the Plaintiff, by placing same in the United States Mail, postage prepaid, and properly addressed as follows:

Brian M. Snow, AIS# 228680
Bibb Correctional Facility
565 Bibb Lane
Brent, AL 5034

   /s/ MARY GOLDTHWAITE
OF COUNSEL