IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRIAN M. SNOW,  #228680, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION  NO. 2:17-CV-149-RAH-SRW |
| | ) | (WO) |
| | ) | |
| LT. HINES,  et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by

Brian M. Snow, an indigent state inmate, challenging actions which occurred at Staton

Correctional Facility.  Doc. 1 at 2.  He names as defendants Warden John E. Crow, Captain

Ronzella Howard,[2] Lieutenant Derrick Hines, and Correctional Officer Cedric Weathers,

who were all employed at Staton during the time relevant to the complaint. In the

complaint, Snow alleges that the defendants are liable to him under the United States

Constitution because Lt. Hines and Officer Weathers forced him to fight another inmate

---

[1] All documents and page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2] Because plaintiff makes no specific factual allegations against Warden Crow and Captain Howard, the Court will recommend dismissal of these defendants.

which resulted in personal injury to him.  Doc. 1 at 4-5.[3]  Snow seeks monetary damages

from the defendants for the alleged violation of his constitutional rights.  Doc. 1 at 6.

The defendants filed a special report (Doc. 23) and relevant evidentiary materials in

support, including affidavits, prison documents and medical records, addressing Snow's

claims. Doc. 23-1 thru 23-6. In these documents, the defendants deny that they violated

Snow's constitutional rights and specifically deny that they acted with deliberate

indifference toward Snow.

After reviewing the special report filed by the defendants, the court issued an order

on July 14, 2017 directing Snow to file a response to the defendants report, supported by

affidavits or statements made under penalty of perjury and other evidentiary materials.

Doc. 24 at 2.  The order specifically cautioned that "**unless within ten (10) days from the

date of this order a party . . . presents sufficient legal cause why such action should

not be undertaken** . . . the court may at any time [after expiration of the time for the

plaintiff filing a response to this order] and **without further notice to the parties** (1) treat

the special report [and supplement thereto] and any supporting evidentiary materials as a

motion for summary judgment and (2) after considering any response as allowed by this

order, rule on the motion for summary judgment in accordance with the law.  Doc. 24 at 2.

Snow filed an unsworn response to this order on September 5, 2017.  Doc. 30.  Pursuant to

---

[3] Snow states in his complaint that "[m]y rights were violated under the 4, 5, 6, 8, 14th and 1st Amendments of the Constitution." Doc. 1 at 2. However, based upon the allegations in his complaint, the court understands plaintiff to bring 8th Amendment claims for failure to protect and excessive force.  (Doc. 1 at 3-5).

the July 14, 2017 order, the court now treats the defendants' special report as a motion for summary judgment.

Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof and the sworn complaint, the court concludes that the defendants' motion for summary judgment is due to be denied as to the plaintiff's allegations of excessive force and failure to protect brought against them in their individual capacities, and granted with respect to his request for monetary damages against defendants in their official capacities.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

*Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating that there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by

4

inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed.R.Civ.P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice, there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911

5

F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the [defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . .  Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and

6

merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could

believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough review of all the evidence which would be admissible at trial, the court finds that Snow has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants with respect to his request for monetary damages against defendants in their official capacities, but has demonstrated a genuine dispute of material fact as to his allegations of excessive force and failure to protect brought against defendants in their individual capacities.

## III.  FACTS

The plaintiff alleges as follows:

On January 5, 2017 between the hour of 2: a.m. and 3: a.m. I was housed at Staton Correctional Facility when I engaged in an altercation with another inmate, and after the altercation, Officer Weather reported the incident to L.t. Hines the shift commander, and I arrived in the area, I met with L.t. Hines standing out on the prison black top, and stated to me "Oh you like to sneak people and I told the L.t., I did not sneak anybody, that the other inmate kept messing with me." But after my response I noted that L.t. Hines had the other inmate, that I had the altercation with, standing inside the prison law library.

L.t. Hines then told me that he was going to let me, and the other inmate fight one on one "and I told L.t. Hines " that I was not going to fight anyone, and L.t. Hines told me either I fight the other inmate, or he was going to beat me up" and I

stated L.t. Hines you wrong "and L.t. Hines replied he was just trying to prevent a killing, because the other inmate was feeling like he wanted to kill me.

L.t. Hines then went to the prison law library and got the other inmate, as I stood outside against the wall, and once L.t. Hines came out of the prison library with the other inmate, and the inmate saw me, the inmate rushed me and swung on me and I was punched in the face "and slammed to the ground, as I was hit several times, and then gotten up by L.t. Hines and Officer Weather "and after being stood up "L.t. Hines told me and the other inmate and myself to continue fighting, and the other inmate rushed me and slammed me again to the ground, injuring my right sholder [sic] "and I was immediately taken to Elmore Community Center for treatment.

Upon arrival, I was taken to x-ray "and it does indicate, that I received a third degree A.C.E. joint seperation which was written up upon my medical file by the doctor, and since that time I have received one more x-ray" that shows upon my medical file, but I was only placed on medication for pain.

I was transported from Staton Correctional to Bibb County Correctional in January 2017 and in March 2017, I was scheduled for a second x-ray to be conducted" and it once again showed I have a third degree A.C.E. Joint seperation "and according to Dr. Palkovic of Bibb County Health Care Unit set an appointment for me to have surgery for plates and screws "because my matter has been stated to me "that I will remain injured for the rest of my life" as all my damages of injury stemed from the very fight, that L.t. Hines forced me to be a part of which was against the system standard of procedures and for sure video footage from January 5, 2017 would support his incident.

Doc. 1 at. 3-5 (errors in original).

The defendants deny these claims. Defendant Lieutenant Hines testified as follows:

On January 5, 2017 at approximately 2:05 a.m. I was notified by CO Weathers, that inmate Snow and Inmate Lawson were in a verbal altercation. CO Weathers escorted both inmates to the Shift Office. Both inmates began arguing and grabbed each other attempting to fight. They were separated immediately. Both inmates signed a living agreement and returned to their assigned living areas.

Inmate Snow was questioned and during questing, he advised me he has hurt his shoulder previously by jumping off his rack in the dorm.  At no time did I force inmate Snow to fight inmate Lawson or any other inmate.

Doc. 23-1 at 1-2 (errors in original).  Defendant Correctional Officer Cedric Weathers also testified as follows:

On January 5, 2017, I conducted a Security check in D-Dormitory. I observed inmates Snow and Lawson engaged in a verbal altercation. I informed Lt. Derrick Hines and escorted both inmates to the Shift Office. Lt. Hines reprimanded both inmates. The inmates continued to taunt each other and grabbed each other attempting to fight. They were separated and the issue was resolved. Both inmates signed a living agreement.

Doc. 23-2 at 1-2. Further, defendant Captain Howard testified, concerning the January 5, 2017 incident, as follows:

I did question Inmate Snow in which he asked me to speak with Inmate John Hunter WM/262488 for the truth. Inmate Hunter informed me he observed Inmate Snow fall from his bed and injure his shoulder. Under Inmate Snow statement on his Inmate Body Chart Documentation Form, Inmate Snow told the nurse, "I fell backwards on to floor and landed on my RT shoulder."

Doc. 23-5 at 2 (errors in original). Finally, defendant Warden Crow stated after reviewing the complaint that he had "no direct knowledge of this incident due to not being at work during this incident." Doc. 31-1 at 1.

## IV. DISCUSSION

### A. Sovereign Immunity

To the extent that Snow sues the defendants in their official capacities, they are immune from suit for monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct.

10

1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's Immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Depart. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).  Summary judgment is therefore due to be granted in favor of the defendants on the claims for monetary damages brought against them in their official capacities.

## B.  Qualified Immunity

The defendants raise the defense of qualified immunity to the claims brought against them in their individual capacities. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit [for damages] in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir.2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Indeed, the Supreme Court has stated that the particular question for the court is "whether the state of the law in [2017] gave respondents fair warning that their alleged treatment of [Snow] was unconstitutional." *Id*. at 741.

"The purpose of the qualified immunity defense is to protect[] government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal quotations and citations omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted).  The Eleventh Circuit has determined that the law is "clearly established" for purposes of qualified immunity "only by decisions of the U. S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  *Jenkins v. Talladega City Bd. of Education*, 115 F.3d 821, 826-827 n.4 (11th Cir. 1997). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009).  Even so, qualified immunity is an affirmative defense only to an action for damages; it does not bar actions for declaratory or injunctive relief.  *See Wood v. Strickland*, 420 U.S. 308, 315, n.6 (1975) ("Immunity from damages does not ordinarily bar equitable relief as well."), *overruled in part on other grounds by Harlow*, 457 U.S. 800; *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991) (holding that the defense of qualified immunity is limited to actions for monetary damages and does not serve as a defense to actions seeking equitable relief),

12

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." *Gonzalez*, 325 F.3d at 1234. The court concludes as a matter of law that the defendants can not demonstrate they were acting within the scope of their discretionary authority, when they allegedly forced Snow to fight another inmate. Indeed, the United States Supreme Court has held that "the discretion accorded prison officials is not absolute. A prisoner retains those constitutional rights not inconsistent with legitimate penological objectives." *Hudson v. Palmer,* 468 U.S 517, 547-48 (1984). Further, the Supreme Court has specifically stated that "gratuitously allowing the beating or rape of one prisoner by another serves no "legitimate penological objective[e]." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (Claim for deliberate indifference stated where transsexual prisoner sued officials for harm caused to him by other inmates when he was placed in general prison population). The Court recognizes, taking Snow's version of the facts as true, that Lieutenant Hines offered a reason for the forced fight when he told Snow, "he was just trying to prevent a killing, because the other inmate was feeling like he wanted to kill me." Doc. 1, p. 4. However, the court reads *Farmer* and *Hudson* to direct that such conduct is "inconsistent with penological objectives," and thus can not support a finding by this court that defendants acted pursuant to their discretionary authority. *Id.*

Having determined that the defendants have failed to meet the "discretionary authority" standard, the court could conclude that qualified immunity does not apply on this basis alone. However, for the sake of completeness, the court will consider whether Snow has demonstrated both that "(1) the defendants violated a constitutional right, and

(2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004); *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (same); *Youmans*, 626 F.3d at 562 (citation omitted) ("[O]nce a defendant raises the defense [of qualified immunity and demonstrates he was acting within his discretionary authority], the plaintiff bears the burden of establishing both that the defendant committed a constitutional violation and that the law governing the circumstances was clearly established at the time of the violation."). This court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." *Id.*; *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42) (holding that the court may analyze the elements "in whatever order is deemed most appropriate for the case.") (quoting *Hope,* 536 U.S. at 739). Thus, as directed by the Supreme Court in *Hope,* the court will examine the question of "whether the state of the law in [2017] gave respondents fair warning that their alleged treatment of [Snow] was unconstitutional." 536 U.S. at 741.

These questions must be answered in the affirmative for the reasons stated below. First, as early as 1984 the Eleventh Circuit recognized that allegations that a correctional officer took actions to incite violence by other prisoners against an inmate stated a claim. *Harmon v. Berry,* 728 F. 2d 1407, 1409 (11th Cir. 1984) (Prisoner's claim that prison officials "have labeled him a snitch and are exposing him to inmate retaliation" was sufficient to state a claim for purposes of §1915 review.). Further, citing *Harmon*, a district court recently concluded that plaintiff inmate stated an Eighth Amendment claim when

prison officials "incited other inmates to threaten his life and stood idly by while they did so." *Jones v. Al St. Lawrence,* 2008 WL 5142396 *4-5 (S.D. Ga. 2008) quoting *Harmon,* 728 F. 2d at 1409 ("Prisoners have a constitutional right to be protected from violence while in custody). Another district court determined that a genuine dispute of material fact existed for Eighth Amendment purposes when an inmate alleged that a prison official "informed plaintiff and [another inmate] a cell transfer was contingent on the inmates fighting each other" and "threatened to spray the inmates with chemical agents if they refused to fight." *Flanning v. Baker,* 2016 WL 4703868 *5 (N.D. Fla. 2016). Thus, the court concludes that "the state of the law in [2017] gave respondents fair warning that their alleged treatment of [Snow] was unconstitutional." *Hope,* 536 U.S. at 741. Accordingly, qualified immunity does not protect the defendants from liability for their actions. Having so determined, the court will now turn its attention to the question of whether Snow can survive summary judgment on his claim that defendants acted with deliberate indifference to his safety and subjected him to cruel and unusual punishment when they allegedly forced him to fight another inmate.

## C.  Deliberate Indifference

### 1.  Standard of Review

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer,* 511 U.S. at 844 (internal quotations and citations omitted). Officials responsible for prison inmates

may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with this knowledge disregards the risk by failing to take reasonable measures to abate it. *Id.* at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jean*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staff and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson,* 468 U.S. at 526–27.  The Eleventh Circuit, however, has consistently "stress[ed] that a prison custodian is not the guarantor of a prisoner's safety." *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (internal quotation marks and citation omitted). The duty to protect inmates from one another is not absolute "because the Eighth Amendment addresses only punishment. Whether an injury inflicted by fellow prisoners . . . is punishment depends on the mental state of those who cause or fail to prevent it. The requisite mental state for prison officials is intent, or its functional equivalent, described as deliberate indifference[.]" *King v. Fairman*, 997 F.2d 259, 261 (7th Cir. 1993) (internal quotation marks and citations omitted). "Only '[a] prison official's deliberate indifference to a known, substantial risk of

16

serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 746
F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Cnty., Ala*., 268 F.3d 1014,
1028 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S.
544 (2007). The Eleventh Circuit has consistently held that "to state a § 1983 cause of
action against prison officials based on a constitutional deprivation resulting from cruel
and unusual punishment, there must be at least some allegation of a conscious or callous
indifference to a prisoner's rights, thus raising the [mere] tort to a constitutional stature."
*Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso
County Jail*, 642 F.2d 134, 136 (5th Cir. 1981); *Zatler v. Wainwright*, 802 F.2d 397, 400
(11th Cir. 1986).

The law requires establishment of both objective and subjective elements to
demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748
F.3d 1090, 1099 (11th Cir. 2014). With respect to the objective elements of a deliberate
indifference claim, an inmate must first show "an objectively substantial risk of serious
harm . . . exist[ed].  Second, once it is established that the official is aware of this substantial
risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh*,
268 F.3d at 1028–29.  As to the subjective elements, "the official must both be aware of
facts from which the inference could be drawn that a substantial risk of serious harm exists,
and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel
and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's
failure to alleviate a significant risk that he should have perceived but did not, while no

cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834–38, 114 S.Ct. at 1977–80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person knew at the time of the incident." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). A correctional official must be aware of a sufficiently serious threat to an inmate's safety before the Eighth Amendment "imposes a duty to provide reasonable protection. Merely

negligent failure to protect an inmate from attack does not justify liability under section 1983[.] . . .   The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted); *King*, 997 F.3d at 261 ("To sustain his constitutional claim, the inmate must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.") (internal quotation marks omitted).

Consequently, to survive the properly supported motion for summary judgment filed by the defendants, Snow must first demonstrate an objectively substantial risk of serious harm existed to him prior to the altercation and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), *citing Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, Snow must then satisfy the subjective component.  To do so, Snow "must [show] that the defendant[s] subjectively knew that [Snow] faced a substantial risk of serious harm from [his inmate attacker].  The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "***particular threat or fear felt by [the]***

> *[p]laintiff*." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003)
> (emphasis added). Moreover, the defendant-official "must be aware of
> specific facts from which an inference could be drawn that a substantial risk
> of serious harm exists — and the prison official must also draw that
> inference." *Id*. at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original). Based upon a liberal reading of the complaint, the court concludes that Snow attempts to state an Eighth Amendment claim for both excessive force and failure to protect.

### 2.  Claims for Excessive Force and Failure to Protect

Whether Snow's deliberate indifference claim is analyzed as an excessive force claim or a claim for failure to protect, Snow must demonstrate facts which satisfy both the objective and subjective elements to survive summary judgment.  The Court concludes that the factual allegations in Snow's complaint, taken as true, demonstrate that an objectively substantial risk of serious harm existed to Snow prior to the altercation and that both defendants Officer Weather and Lieutenant Hines "disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson,* 568 F. App'x at 721.  First, Snow alleges that he had an altercation with another inmate, which Weather reported to Hines. Doc. 1, p. 3.  Second, Snow mantains that Hines told him he had to fight the other inmate or "he was going to beat me up."  Doc. 1, p. 4.  Finally, Snow alleges that after the other inmate "punched [him] in the face and slammed [him] to the ground," Hines and Weather "stood [him] up," Doc. 1, pp. 4-5. "L.t. Hines told me and the other inmate and myself to continue fighting, and the other inmate rushed me and slammed me again to the

ground injuring my right sholder [sic]." Doc. 1, p. 5. Thus, the court concludes that plaintiff's allegations satisfy the objective component of his deliberate indifference claims.

Further, the factual allegations in Snow's complaint demonstrate "that the defendant[s] subjectively knew that [Snow] faced a substantial risk of serious harm from [his inmate attacker]. The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* Indeed, Snow alleges that both Hines and Weathers knew of the initial altercation between Snow and the other inmate. Further, Snow alleges that Hines instructed him to fight the other inmate and that both defendants watched the fight and stepped in to stand him up so the fight could continue. Finally, he alleges that he was injured because his shoulder was separated. Thus, the court concludes that plaintiff's allegations, which are disputed by the defendants, satisfy the subjective component of his deliberate indifference claims. Accordingly, summary judgment is due to be denied as to plaintiff's deliberate indifference claims.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment as to the plaintiff's claims seeking monetary damages from them in their official capacities be GRANTED and these claims be DISMISSED with prejudice because the defendants are entitled to absolute immunity from such damages.

2.  The motion for summary judgment on behalf of the defendants Correctional Officer Weathers and Lieutenant Derrick Hines as to the plaintiff's excessive force and failure to protect claims brought against them in their individual capacities be DENIED.

3.  The motion for summary judgment on behalf of the defendants Warden John E. Crow and Captain Ronzella Howard in their individual capacities be GRANTED and these defendants be DISMISSED as parties to this action.

3.  This case be set for an evidentiary hearing on the plaintiff's surviving excessive force and failure to protect claims against defendants Correctional Officer Weathers and Lieutenant Derrick Hines for monetary damages in their individual capacities.

On or before **March 3, 2020**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the proposed factual findings and legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact [and law] and

22

those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 19th day of February, 2020.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge